# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

|  |  |
|---|---|
| ) | |
| In re: ) | Chapter 7 |
| ) | Case No. 08-31098 |
| NIGEL ALAN BLAKE and ) | |
| MADELYN LOUISE BLAKE, ) | |
| ) | |
| Debtors ) | |
| ) | |

## MEMORANDUM OF DECISION

Before the Court is a request by a creditor in the Chapter 7 bankruptcy case filed by Nigel Alan Blake and Madelyn Louise Blake (the "Debtors") to redact portions of the transcript of a hearing held over a year ago. The motive for the request is fairly transparent – having failed to obtain this Court's permission to keep secret the amount paid by the creditor to the Debtors and their attorney in settlement of alleged violations of the automatic stay, the creditor now wants the transcript redacted to remove that disclosure.

## I.    FACTS AND TRAVEL OF THE CASE

The Debtors filed this bankruptcy case under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code")[1] on July 31, 2008. On Schedule F–Creditors Holding Unsecured Nonpriority Claims ("Schedule F"), filed with the petition, the Debtors listed "Verizon" as an unsecured creditor with a claim totaling

---

[1] See 11 U.S.C. § 101 et seq. All references to statutory sections are to the Bankruptcy Code, as amended by the Bankruptcy Abuse and Prevention and Consumer Protection Act (Pub. L. 109-8, 119 Stat. 23 (2005)), unless otherwise specified.

$475.63 for "Utilities" and identified their Verizon account number by the last four digits.

See Chapter 7 Voluntary Petition, All Schedules and Statements, Matrix and Disclosure of Attorney Compensation, July 31, 2008, ECF No. 1. The Debtors also included Verizon on their matrix list of creditors (the "Mailing Matrix"). See id. On August 6, 2008, all creditors listed on the Mailing Matrix, including Verizon, were sent notice of the Debtors' bankruptcy case filing (the "Notice of Filing"), which identified the Debtors' names, address, bankruptcy case number, and full social security numbers. See Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines, Aug. 4, 2008, ECF No. 10; BNC Certificate of Mailing, Aug. 6, 2008, ECF No. 11.[2]

According to the Debtors, approximately one month after their bankruptcy case was filed, they received a letter from Verizon which identified the Debtors' bankruptcy case number and filing date and also noted that Verizon had "received notification that [the Debtors had] filed for bankruptcy." See Debtor's Motion for Stay Violation Sanctions: Verizon (the "First Sanctions Motion"), Ex. B, Sept. 29, 2008, ECF No. 14. In that letter (the "Information Request"), Verizon asked the Debtors to provide their Verizon account number, the names listed on the Verizon account, the Debtors' social security numbers, the state in which service was provided, and a phone number where the Debtors could be reached for further information. On September 12, 2008, the Debtors' attorney, L. Jed Berliner ("Attorney Berliner"), responded to the Information Request, declining to provide the requested information.[3]

---

[2] Although notices of bankruptcy case filings sent to creditors include the debtors' full social security numbers, copies of those notices entered on the Court's public dockets are redacted so that only the last four digits of the social security number appears.

[3] According to Attorney Berliner's response to the Information Request, see First Sanctions Motion, Ex. C, he believed the account numbers to be irrelevant, as all prepetition debt would be

Shortly thereafter, Verizon sent a notice to the Debtors, dated September 24, 2008, advising that the Debtors' account was past due and threatening to cancel service if payment was not made by October 10, 2008 (the "First Cancellation Notice").   In response to the First Cancellation Notice, on September 29, 2008, the Debtors filed their First Sanctions Motion, asking this Court to sanction Verizon for its alleged violation of the automatic stay imposed by § 362(a) of the Bankruptcy Code.[4]   The certificate of service attached to the First Sanctions Motion indicates that the motion was served on Verizon at three separate addresses, including the addresses for Verizon that appeared in the Information Request and First Cancellation Notice.   See First Sanctions Motion, 6.

Three days later, the Court scheduled the First Sanctions Motion for a hearing to be held on November 6, 2008.   See Notice of Nonevidentiary Hearing, Oct. 2, 2008, ECF No. 15.   On that same date, Attorney Berliner filed a certificate of service indicating that he had served Verizon (at the same three addresses) with a copy of the Notice of the November 6, 2008 hearing.   See Certificate of Service of Notice of Hearing, Oct. 2,

---

discharged.  He also noted that the Debtors' full social security numbers had been provided with the Notice of Filing and therefore should not have to be repeated.  While the latter assertion is undoubtedly correct, the first is hard to justify.  Although the last four digits of the Verizon account number was set forth on Schedule F, the Debtors' bankruptcy schedules may not have been immediately available to Verizon.  And Attorney Berliner's simple accommodation to Verizon, rather than his unhelpful response, might have avoided much of the controversy that followed.

[4] Pursuant to § 362(a), "a petition filed under [the Bankruptcy Code] . . . , operates as a stay, applicable to all entities, of –  . . . (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . ."  11 U.S.C. § 362(a)(6).  Section 362(k) creates a right of action for violations of the automatic stay, and provides: ". . . an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k) (formerly 11 U.S.C. § 362(h), this section was recodified as §362(k) in 2005).

2008, ECF No. 16.

The Debtors say that, also on October 2, 2008, a Verizon representative left a message on the Debtors' answering machine asking the Debtors to call Verizon to make payment arrangements.  On October 13, 2008, the Debtors say, they received a second message on their answering machine in which a Verizon representative stated that it was critical for the Debtors to make payment arrangements in order to avoid termination of service.  Verizon also sent an account statement to the Debtors, dated October 13, 2008, which the Debtors say included prepetition amounts due.  Verizon sent yet another notice, dated October 8, 2008 (but which the Debtors say they received on October 14, 2008), threatening to cancel the Debtors' service unless all overdue amounts were paid by October 10, 2008 (the "Second Cancellation Notice").

The Debtors immediately sent a copy of the Second Cancellation Notice to Attorney Berliner, who claims to have contacted Verizon on October 15, 2008. According to Attorney Berliner, he spoke with a Verizon representative who assured him that the account would be put in "permanent nonprocess status" and a new bill reflecting only postpetition charges would be issued.  See Debtor's Amended Motion for Stay Violation Sanctions: Verizon, 4 ¶ 15, Nov. 6, 2008, ECF No. 19.

Despite the representations to the contrary claimed to have been made by the Verizon employee during the October 15, 2008 telephone conversation, the Debtors' internet service *was* terminated on October 24, 2008.  Attorney Berliner says that he immediately contacted Verizon, and was told that the service would be reinstated within a few hours.  Attorney Berliner also says that he was told by the Verizon representative that Verizon's records reflected receipt of the pending sanctions motion and notice of

4

the hearing scheduled for November 6.

At the November 6, 2008 hearing on the First Sanctions Motion (the "First Sanctions Hearing"), no one appeared on Verizon's behalf.  Attorney Berliner informed the Court at that time of, and proffered an affidavit attesting to, the events that had occurred after the filing of the First Sanctions Motion.  Because Verizon had not received advance notice that the matters included in that affidavit would be considered at the First Sanctions Hearing, Attorney Berliner, at the Court's urging, withdrew the First Sanctions Motion and filed an amended motion for sanctions the same day (the "Amended Sanctions Motion").

The Amended Sanctions Motion included the events that followed the filing of the First Sanctions Motion and was initially set for a hearing to be held on December 11, 2008.  After two continuances at the request of the parties, the hearing was ultimately held on February 5, 2009.  On February 3, 2009 – approximately 3 months after the filing of the Amended Sanctions Motion and only 2 days before the hearing – Verizon filed a response (the "Response").  In the Response, Verizon did not admit or deny the allegations of the motion (as required by Massachusetts Local Bankruptcy Rule ("MLBR") 9013-1(i)), but alleged that it did not receive the Debtors' full account number in enough time to prevent the disconnection of the Debtors' service, concluding that: "the Debtors' failure to comply with the noticing requirements of 11 U.S.C. § 342(c)(2)(A) and the Debtors' counsel [sic] refusal to timely assist [Verizon] in the location of the Debtors' accounts resulted in the temporary disconnection of the Debtor's [sic] service."  See Response, Feb. 3, 2009, ECF No. 35.

At the February 5, 2009 hearing on the Amended Sanctions Motion (the "Second

5

Sanctions Hearing"), counsel for Verizon appeared.  At the conclusion of that hearing, the Court scheduled the matter for an evidentiary hearing to be conducted in June 2009.

Prior to the scheduled trial date, however, Verizon filed a motion, assented to by the Debtors, to continue the trial.  In that motion, Verizon indicated that a settlement had been reached and that the parties expected to be filing a motion to approve the settlement within a few days.  See Motion by Verizon New England, Inc., to Suspend Response Date and to Continue Trial (Assented), ¶ 3, June 12, 2009, ECF No. 51.  In light of that representation, the Court continued the matter generally.

No motion to approve a settlement was filed.  However, on September 21, 2009, the parties filed a "Stipulation of Dismissal" with regard to the Amended Sanctions Motion.   The Stipulation of Dismissal stated that "[p]ursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), made applicable by Fed. R. Bankr. P. 9014(c), the debtor and respondent stipulate to dismiss Debtor's Amended Motion for Stay Violation Sanctions." See Stipulation of Dismissal, Sept. 21, 2009, ECF No. 71.

On the same date, Debtors' counsel filed a "Corrected Supplement to Disclosure of Compensation to Attorney for the Debtor" (the "Supplemental Fee Disclosure") in which he indicated that 1) he had received additional compensation from Verizon in settlement of the Amended Sanctions Motion, 2) the "parties finally achieved a settlement agreement," and 3) "disclosure of the settlement amount is available for oral presentation to the Court at its request."  See Supplemental Fee Disclosure 2 ¶ 7, 3 ¶ 9, Sept. 21, 2009, ECF No. 73.

The Court marked the Stipulation of Dismissal for hearing, which was held on October 15, 2009 (the "Settlement Hearing").   When the Court inquired into the

resolution of the matter, Attorney Berliner responded that the matter had settled "with a payment of a sum certain." Hr'g Transcript 2:12-13, Oct. 15, 2009. When the Court asked what the amount of the settlement was, Verizon's counsel indicated that the settlement contained a confidentiality agreement and that he preferred not to disclose the monetary terms in open court. Unwilling to accept the parties' agreement to keep the amount confidential, the Court stated that, absent full disclosure, it would strike the Stipulation of Dismissal and the matter would proceed to trial. At that point, the parties indicated their willingness to disclose the amount of the settlement and did so, informing the Court as to the gross amount of the settlement and the portion thereof that would be allocated to the Debtors' attorney's fees. The Court then indicated that no further action would be required.

Thereafter, the Chapter 7 trustee was discharged and the case was closed on April 5, 2010. In early 2011, an official transcript of the Settlement Hearing was requested (the "Hearing Transcript").[5] The Hearing Transcript was filed on the docket on February 9, 2011, see ECF No. 78, but was not immediately made publicly viewable. Instead, in keeping with the District Court of Massachusetts Bankruptcy Court policy regarding the electronic availability of transcripts and requests for redaction (the "Transcript Policy"),[6] the Court issued a "Notice of Filing of Official Transcript and of Deadlines Related to Restriction, Redaction and Release" (the "Transcript Notice") on February 10, 2011. See ECF No. 79.

The Transcript Notice set forth deadlines and procedures by which parties could

---

[5] The Clerk's Office records reflect that the request was made by Attorney Berliner.

[6] See Transcript Policy – Deadlines for Restriction, Redaction and Release, available online at www.mab.uscourts.gov/mab/node/95 (last visited May 2, 2011).

request redaction of the transcript, specifically indicating that social security numbers, financial account numbers, and minors' names and birthdates should be redacted.  In the absence of a request for redaction, the transcript would be made publicly available through the electronic docket after the expiration of 90 days.

On March 2, 2011, Verizon filed a "Request . . . for Redaction of Transcript" (the "Redaction Request") asking the Court to redact from the transcript the references made to the dollar amount of the settlement.  See ECF No. 81.  Upon receipt of the Redaction Request, the matter was taken under advisement.  Although opportunity to respond has been given, the Debtors have not responded to the Redaction Request, nor has Verizon filed a brief or any further pleadings to expand upon the basis for its request.  Nonetheless, the Court now elucidates its reasons why the Redaction Request must be denied.

II.    DISCUSSION

### A.  Section 107: Public Access to Bankruptcy Records and Exceptions

Outside of the bankruptcy context, the right of public access to judicial records is entrenched in this country's judicial system, see, e.g., Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978) ("the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents"), and the sealing or redaction of documents on the record is considered with a keen eye toward the presumption that papers filed in the course of judicial proceedings should be open to the public.  See, e.g., FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987).

In Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.), the

First Circuit Court of Appeals recognized that this right of public access vis-à-vis

bankruptcy proceedings is specifically codified in the Bankruptcy Code at §107(a)[7]:

> In the bankruptcy context, the right of public access is codified in a specific
> statutory provision, 11 U.S.C. § 107.   Section 107, which Congress
> enacted in 1978, establishes a broad right of public access, subject only to
> limited exceptions set forth in the statute, to all papers filed in a
> bankruptcy case. . . . As one of our sister circuits has explained,
>
> > section 107(a) is rooted in the right of public access to
> > judicial proceedings, a principle long-recognized in the
> > common law and buttressed by the First Amendment.  This
> > governmental interest is of special importance in the
> > bankruptcy arena . . . .
>
> In re Crawford, 194 F.3d 954, 960 (9th Cir. 1999).

422 F.3d 1, 6-7 (1st Cir. 2005).   And because this "broad right of public access" in

bankruptcy cases is a creature of federal statutory law, the exceptions to it are also

limited by specific statutory terms.   As the Gitto court explained:

> Together, the two components of § 107 – the broad right of access
> created in § 107(a) and the exceptions set forth in § 107(b) – create a
> framework for determining whether a paper filed in a bankruptcy case is
> available to the public or subject to protection.  Absent § 107, this question
> would be addressed by reference to the common law.  Because § 107
> speaks directly to the question of public access, however, it supplants the
> common law for purposes of determining public access to papers filed in a
> bankruptcy case.
>
> . . .
>
> Once the presumption of public access attaches under § 107(a),

---

[7] Section 107(a) provides:

> Except as provided in subsections (b) and (c) and subject to section 112,
> a paper filed in a case under this title and the dockets of a bankruptcy court are
> public records and open to examination by an entity at reasonable times without
> charge.

11 U.S.C. § 107(a).

the next step in the inquiry is . . . to determine whether the material at issue falls within a specific exception to the presumption – namely, into one of the § 107(b) categories.

Gitto, 422 F.3d at 7-8, 10.

Sections 107(b) and (c)[8] thus define a universe of information that is exempt from the right of public access established by subsection (a). But none of those exceptions applies here. Verizon has neither argued nor demonstrated that the information sought to be redacted is "a trade secret or confidential research, development, or commercial information," see 11 U.S.C. § 107(b)(1), "scandalous or defamatory," see 11 U.S.C. § 107(b)(2), or "would create undue risk of identity theft or other unlawful injury," see 11 U.S.C. § 107(c). See also Fed. R. Bankr. P. 9018.[9] Therefore, there are no grounds under § 107(b) or (c) to grant Verizon's Redaction Request.

### B. Personal Information and Privacy Protections

In addition to the limited exceptions to public access set forth in §§ 107(b) and (c), Federal Rule of Bankruptcy Procedure 9037(a) also *requires* the redaction of certain sensitive, private information from documents filed with the bankruptcy court. The information required to be redacted pursuant to Bankruptcy Rule 9037(a) includes social

---

[8] Following the First Circuit's decision in Gitto, Congress amended the Bankruptcy Code in 2005 to include additional exceptions under subsection (c). See 11 U.S.C. § 107(c).

[9] Bankruptcy Rule 9018 outlines the procedure for requesting the protection of information pursuant to § 107 and provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation. . . .

Fed. R. Bankr. P. 9018.

security numbers, taxpayer-identification numbers, financial account numbers, and the

birthdates and names of minors.   See Fed. R. Bankr. P. 9037(a).[10]

Any tension between (1) the policy of making documents, including transcripts of

court proceedings,[11] publicly and electronically available and (2) the need to protect the

---

[10] Importantly, Bankruptcy Rule 9037(a) contemplates redaction of the specified information *prior* to the filing of the document with the Court.  It provides:

> (a) *Redacted Filings*.   Unless the court orders otherwise, in an electronic or paper filing made with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual, other than the debtor, known to be and identified as a minor, or a financial-account number, a party or nonparty making the filing may include only:
>
>> (1) the last four digits of the social-security number and taxpayer-identification number;
>>
>> (2) the year of the individual's birth;
>>
>> (3) the minor's initials; and
>>
>> (4) the last four digits of the financial-account number.

Fed. R. Bankr. P. 9037(a).   Subsection (b) lists several exemptions to the redaction requirements of subsection (a), none of which are relevant here.

[11] Although in Picciotto v. Salem Suede (In re Salem Suede), the First Circuit assumed, but did not decide, that a transcript of a hearing in a bankruptcy case was a "document," see 268 F.3d 42, 44 n.2 (1st Cir. 2001), this Court concludes that transcripts made available on its electronic docket are "papers" or "documents" that are "filed" on the Court's dockets.   First, under the Local Rules, transmission of a document to the ECF System (such as the entry of the Hearing Transcript on the docket), "together with the transmission of a Notice of Electronic Filing from the Court, constitutes the filing of the document for all purposes of the Federal Rules of Bankruptcy Procedure and the local rules of this Court, and constitutes entry of the document on the docket kept by the Clerk pursuant to Fed. R. Bankr. P. 5003."   See MLBR Appx 8, Rule 3(a).   And the "official record is the electronic recording" of an electronically filed document.   Id. at Rule 3(b).   Second, in Gitto, the First Circuit recognized that under § 107, "the presumption of public access applies to *any* paper filed in a bankruptcy case, not only the narrower category of papers that would be considered judicial records under the common law."   422 F.3d at 9-10. Finally, the Court notes that, in the limited number of published decisions where the issue has arisen, other courts have also considered transcripts to be the same as other documents submitted to the court.   See, e.g., United States v. Antar, 38 F.3d 1348, 1361 (3d Cir. 1994) ("at the most basic level, the transcript at issue is a public judicial document, covered by a presumptive right of access") (cited in Salem Suede, 268 F.3d at 44 n.2); Hausfeld v. Cohen Milstein Sellers & Toll, PLLC, 2009 U.S. Dist. LEXIS 96240, *11-12 (D. Pa. Oct. 14, 2009).

information encompassed by Bankruptcy Rule 9037(a) has been resolved by the
Judicial Conference of the United States' "Policy on Privacy and Public Access to
Electronic Case Files (March 2008)" (the "Judicial Conference Privacy Policy").[12]  Under
that policy,

> [c]ourts making electronic documents remotely available to the public shall
> make electronic transcripts of proceedings remotely available to the public
> if such transcripts are prepared.   Prior to being made electronically
> available from a remote location, however, the transcripts must conform to
> . . . Fed. R. Bankr. P. 9037(a).
>
> Once a prepared transcript is delivered to the clerk's office . . . the
> attorneys in the case are . . . responsible for reviewing it for the personal
> data identifiers required by the federal rules to be redacted, and providing
> the court reporter or transcriber with a statement of the redactions to be
> made to comply with the rules.

The Transcript Policy for the Bankruptcy Courts in the District of Massachusetts, in turn,
was promulgated to effectuate the Judicial Conference's Privacy Policy and to
implement the procedures outlined in that policy for the redaction of information from
filed transcripts.[13]

But neither the Judicial Conference Privacy Policy nor the Transcript Policy are
intended to open the door to *automatic* transcript redactions that extend beyond the
scope of information protected under Bankruptcy Rule 9037(a).  Instead, as the Judicial
Conference Privacy Policy notes, "[t]hese procedures are limited to the redaction of the

---

[12] See Judicial Conference Privacy Policy, available online at http://www.uscourts.gov/RulesAnd
Policies/JudiciaryPrivacyPolicy/March2008RevisedPolicy.aspx (last visited May 2, 2011).

[13] Under both the Judicial Conference Privacy Policy and the Transcript Policy, once a transcript
is ordered, it must be placed on the electronic docket and made available to the public.
However, it will not be publicly viewable for a period of 90 days, during which time, interested
parties are directed to review the transcript and notify the court reporter of any redactions that
should be made before the transcript is made public.

specific personal data identifiers listed in the rules."[14]   Thus, because the Redaction

Request does not concern any personally identifying information, redaction of the

settlement amount from the Hearing Transcript is not warranted under Bankruptcy Rule

9037(a), the Judicial Conference Privacy Policy, or this District's Transcript Policy.

### C.  Other Grounds for Redaction

While the presumption of public access to documents filed in a bankruptcy case

is paramount, bankruptcy courts may also order the sealing or protection of additional

information where justified.   Under Bankruptcy Rule 9037(d), courts may "*[f]or cause*, . .

. by order in a case under the Code: (1) require redaction of additional information; or

(2) limit or prohibit a nonparty's remote electronic access to a document filed with the

court."  Fed. R. Bankr. P. 9037(d) (emphasis supplied).  <u>See also</u> MLBR 9018-1 (a), (f).

Before prohibiting the public disclosure of information not delineated in the Bankruptcy

Code or Rules, however, the bankruptcy court must first determine that cause has been

established.   <u>See</u> Fed. R. Bankr. P. 9037(d).   Given that the Debtors and Verizon

initially requested that the settlement amount remain confidential, the Court feels bound

to consider whether its decision to require disclosure at the Settlement Hearing was in

error.   And since Verizon has not presented any additional arguments in favor of the

need for confidentiality since the time of the hearing, the question is whether there was

cause for keeping the information out of the public record at the time of the Settlement

---

[14] <u>See also</u> <u>Pfizer, Inc. v. Teva Pharm. USA, Inc.</u>, 2010 U.S. Dist. LEXIS 67631, *6 (D.N.J. July 7, 2010).   The Court notes that Verizon did not attempt to use the "automatic" redaction procedures to redact the amount of the settlement, and instead complied with the Judicial Conference Privacy Policy for requests to redact information other than personal data identifiers.  For such requests to redact other information, "an attorney may move the court for additional redactions to the transcript."   Judicial Conference Privacy Policy.   And given the mandate of public access to bankruptcy court documents codified in § 107(a), such requests are subject to stringent analysis.  <u>See, e.g.</u>, <u>Gitto</u>, 422 F.3d at 10.

Hearing.   If not, the Court must conclude that no cause exists for redacting the information from the Hearing Transcript now.

The Debtors and Verizon filed their Stipulation of Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) ("Rule 41")[15] in an attempt to end the public record of their contest and deal with the matter privately.   Indeed, in many civil matters, parties use Rule 41 stipulated dismissals to ensure the confidentiality of out-of-court settlements.[16]  But while such stipulated dismissals may be routine in other civil matters, their use in bankruptcy cases is circumscribed by the Bankruptcy Code, Rules, and policy considerations.

For example, where, as here, settlement of a disputed matter provides for compensation to debtor's counsel, that compensation must be disclosed.   <u>See</u> 11 U.S.C. § 329(a)[17]; Fed. R. Bankr. P. 2016(b).[18]  And settlements generally are subject

---

[15] Rule 41 is made applicable to contested matters within bankruptcy cases under Bankruptcy Rules 7041 and 9014(c).   Rule 41 allows a plaintiff (or, in contested matters, the moving party) to "dismiss an action without a court order by filing: . . . (ii) a stipulation of dismissal signed by all parties who have appeared."  Fed. R. Civ. P. 41(a)(1)(A)(ii).

[16] For just one discussion (among many) regarding the debate surrounding the propriety and prevalence of these "secret settlements," <u>see</u> Erik S. Knutsen, "Keeping Settlements Secret," 37 Fla. St. U.L. Rev. 945 (2010).

[17] Section 329(a) provides:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, *shall file with the court a statement of the compensation paid or agreed to be paid*, if such payment or agreement was made after one year before the date of the filing of the petition, *for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation*.
> . . .

11 U.S.C. § 329(a) (emphasis supplied).

[18] Bankruptcy Rule 2016(b) provides:

14

to disclosure and bankruptcy court approval procedures under both the federal and local bankruptcy rules.   See Fed. R. Bankr. P. 9019(a)[19]; MLBR 9019-1(a), (b).[20] Furthermore, the applicability of Rule 41 to contested matters may be waived by the bankruptcy court.   See Fed. R. Bankr. P. 9014(c) (enumerated rules, including Bankruptcy Rule 7041, apply in contested matters "*unless the court directs otherwise*" (emphasis supplied)).   In sum, as the Bankruptcy Court for the District of North Dakota has explained:

> [t]here exists a distinction between ordinary civil litigation between parties dealing with their own funds and litigation in the context of bankruptcy. [Rule 41] . . .   allows for the dismissal of actions by the filing of a stipulation for dismissal signed by all parties who have appeared in the

---

(b)   *Disclosure of Compensation Paid or Promised to Attorney for Debtor.* Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code . . . . *A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.*

Fed. R. Bankr. P. 2016(b).

[19] Bankruptcy Rule 9019(a) provides:

(a) *Compromise.*   On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.   Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

[20] Local Rule 9019-1(a) requires "[a]ll stipulations affecting a case or proceeding before the Court, except stipulations which are made in open court" to be "in writing, signed, and filed with the Court."   See MLBR 9019-1(a).   Parties are also directed to file a signed stipulation or agreement for judgment within 7 days after reaching that agreement. See MLBR 9019-1(b). Under the Local Rules, only settlements of § 523 dischargeability actions may be documented "by the filing of a stipulation or an agreement for judgment."   See MLBR 9019-1(c).   In the present case, the Court, in its discretion, did not order the parties to file the entirety of the settlement terms with the Court as arguably required by the federal and local rules, deeming disclosure on the record at the Settlement Hearing as sufficient under the circumstances of this case.

action.  Upon filing of the stipulation the dismissal is effective without the necessity of court approval.  This rule, however, is not absolute . . . . Once a bankruptcy has been filed the absolute dismissal right of Rule 41 is further circumscribed by Rules 9019(a) and 2002(a)(3) which provide for the compromise or settlement of a controversy only upon notice, hearing and court approval.  The reason for these requirements in a bankruptcy case is not hard to discern.  The Bankruptcy Code envisions a process whereby all parties in interest have equal access to information regarding the debtor's assets, liabilities and claims.  As contrasted to a non-bankruptcy situation, once a person elects to avail himself of the benefits of the federal bankruptcy laws by the filing of a petition, he can no longer expect to have any financial secrets.  The Code contemplates a full and complete disclosure.

In bankruptcy cases . . . approval is committed to the sound discretion of the court consistent with what is in the best interest of the parties in interest or the estate.

In re Trout, 108 B.R. 235, 238 (Bankr. D.N.D. 1989).

While the Court can envision circumstances where confidentiality of a settlement agreement in whole or in part may be in the best interests of the parties, the estate, or both, strong policy reasons persuaded the Court that neither the Debtors' nor Verizon's interests in keeping the settlement confidential in this case outweighed the mandate of disclosure and public access embodied in the Bankruptcy Code and Rules.

The automatic stay imposed by § 362(a) that arises upon the filing of a bankruptcy case is one of the "cornerstones of bankruptcy law."  Curtis v. LaSalle National Bank (In re Curtis), 322 B.R. 470, 483 (Bankr. D. Mass. 2005); see also Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997).  The factual recitations in the First and Amended Sanctions Motions contained serious allegations of Verizon's repeated violations of the automatic stay – violations which, if widespread, affected not only the Debtors, but threatened to undermine the significance and centrality of the automatic stay within the bankruptcy system.  In some cases, violations

16

of the automatic stay are truly idiosyncratic and unlikely to be repeated. But where, as here, (1) the alleged violations were repeated, continued, and increasingly severe; (2) the alleged violations escalated even after communication with the Debtors' attorney and notice of a hearing on a pending motion for stay violation sanctions; and (3) the respondent has denied none of the facts and has raised a rather flimsy excuse for its actions,[21] the controversy transcends a merely private dispute between parties and becomes a general affront to one of "the most basic of debtor protections under bankruptcy law." Soares, 107 F.3d at 975. Indeed, it is this very type of behavior that an award of punitive damages authorized by the Code is designed to deter. See 11 U.S.C. § 362(k).

Given that this Court, in similar circumstances, has awarded substantial punitive damages "in an amount sufficient to serve their purpose of deterrence," Curtis, 322 B.R. at 487,[22] it was incumbent upon the Court to assess the adequacy of the parties' private settlement in light of the gravity of Verizon's alleged violations of the Bankruptcy Code.

---

[21] Although the Court did not proceed to take evidence, the Court finds that Verizon's defense raised in its Response – namely, that not having the Debtors' full account number earlier in the case led to the repeated violations and ultimate termination of service – borders on the spurious. At no time did Verizon deny that it had received the Notice of Filing (containing the Debtors' case number, names, and full social security numbers), which should have enabled a sophisticated business like Verizon to determine the account affected by the filing. And the Debtors attached copies of the written communications from Verizon to the First and Amended Sanctions Motions, the authenticity of which was never denied. Furthermore, Verizon conceded that Attorney Berliner finally provided Verizon with the account numbers on October 15, 2008, but, incredibly, maintained in its Response that it was unable to prevent the termination of service *nine* days later because of the delay in receiving the information.

[22] See also, e.g., id. at 484, 486 (violations of automatic stay continued after notice of violations from debtor's attorney; creditor's "arrogant defiance" of automatic stay heightened by frivolous and meritless defenses); In re Panek, 402 B.R. 71, 77-78 (Bankr. D. Mass. 2009) (agreed-upon amount of punitive damages adjusted upward in light of creditor's conduct in connection with the stay violation); In re Rosa, 313 B.R. 1, 8-9 (Bankr. D. Mass. 2004) (in assessing punitive damages, court considered fact that violations of automatic stay continued even after notified that its actions violated the stay).

To do otherwise would be to ignore the First Circuit's admonition that "courts must display a certain rigor in reacting to violations of the automatic stay." Soares, 107 F.3d at 975-76.[23]

For these reasons, the Court refused to allow the parties to simply dismiss the matter and maintain the confidentiality of their agreement. In light of the impact of such behavior, if true, on the "fresh start" which the bankruptcy system promotes for all honest debtors, it was incumbent on the Court to require disclosure of the settlement amount in order to assess whether it appropriately reflected the severity of the alleged offenses.

This Court determined at the time of the Settlement Hearing that confidentiality of the settlement amount was inconsistent with the Court's responsibility to maintain the integrity of the bankruptcy system. Accordingly, the Court cannot now permit Verizon's "backdoor attempt to 'seal the courtroom.'" Pfizer, 2010 U.S. Dist. LEXIS 67631, at *10-11. The reasons for requiring disclosure at the Settlement Hearing apply with equal force to disclosure of the Hearing Transcript with respect to which § 107(a) presumes public access. To redact the transcript now would circumvent that access and is not justified in this case. As the Third Circuit Court of Appeals artfully explained:

> It is access to the content of the *proceeding* – whether in person, or via some form of documentation – that matters. First, *openness* is ongoing – a status rather than an event. At the heart of the Supreme Court's right of access analysis is the conviction that the public should have access to *information*; the Court never has suggested that an open proceeding is only open to those who are able to be bodily present in the courtroom itself. True public access to a proceeding means access to knowledge of what occurred there. It is served not only by witnessing a proceeding firsthand, but also by learning about it through a secondary source.

---

[23] See also id. at 971 ("Like a shade tree, the automatic stay which attends the initiation of bankruptcy proceedings . . . must be nurtured if it is to retain its vitality.").

<u>Antar</u>, 38 F.3d at 1359-60 (3d Cir. 1994) (emphasis in original) (citations and footnote omitted).

III.   <u>CONCLUSION</u>

This Court has taken a second look at its insistence at the Settlement Hearing that the terms of the settlement reached between the Debtors and Verizon be publicly available for disclosure, and discerns no error in that determination.   The Redaction Request does not fall within the protections of either §107(b) and (c) or Bankruptcy Rule 9037(a), and if allowed, would offend strong policy considerations attendant to enforcement of the automatic stay under § 362(a) of the Bankruptcy Code and to public access to court proceedings.   Therefore, the Redaction Request must be DENIED.   An order in conformity with this memorandum shall issue forthwith.

DATED: May 2, 2011                    By the Court,

<u>                              </u>

Henry J. Boroff
United States Bankruptcy Judge